UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| BRUCE WRIGHT, individually and SAM TULI, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>KELLER WILLIAMS REALTY, INC., a Texas corporation,<br><br>     Defendant. | NO. 1:18-cv-00775<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Bruce Wright ("Plaintiff Wright" or "Wright") and Plaintiff Sam Tuli ("Plaintiff Tuli" or "Tuli") bring this Class Action Complaint and Demand for Jury Trial against Defendant Keller Williams Realty, Inc. ("Defendant" or "Keller Williams") to stop Keller Williams from directing its franchisees to violate the Telephone Consumer Protection Act by making unsolicited, prerecorded and autodialed calls to consumers *without their consent*, including calls to consumers registered on the National Do Not Call registry, and to otherwise obtain injunctive and monetary relief for all persons injured by Keller Williams' conduct. Plaintiff Wright and Plaintiff Tuli, for this Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**INTRODUCTION**

1. Keller Williams is a real estate franchise started with a single office in Austin, Texas in 1983 by Gary Keller and Joe Williams.  Since that time, Keller Williams has grown to more than 900 locations with over 170,000 agents worldwide, becoming the largest real estate franchise in the world.

2.    Keller Williams differentiates itself from other real estate franchises through its training and coaching programs, through which Keller Williams directs the activities of its franchisees, including their marketing efforts.  In fact, "Gary Keller has often said that Keller Williams is 'a training and coaching company that also happens to be in the business of real estate.'"[1]

3.    As a result, in 2015, Training Magazine recognized Keller Williams "as the world's #1 training organization across all industries."[2]  And, both before and since then, Keller Williams has consistently placed in the Top 5 on the Training 125, which ranks companies' excellence in employer-sponsored training and development programs.[3]

4.    Relevant here, for the last several years, a key component of Keller Williams' marketing plan for franchisees instilled through its award winning training and coaching programs has been for agents to purchase lists of potential leads for real estate listings from lead provider companies such as Landvoice Data LLC ("Landvoice"), a company that generates leads from a variety of sources, matches phone numbers to those leads, including cellular telephone numbers and other numbers registered on the National Do Not Call Registry, and provides a web-hosted autodialer for agents to make marketing calls *en masse* to those numbers without the recipients' consent.

5.    In Plaintiff Wright's case, between January 1, 2018 and January 15, 2018, Keller Williams' marketing plan, involving Landvoice's leads and autodialer, resulted in no fewer than 20 unsolicited, autodialed calls by or on behalf of Keller Williams to Plaintiff's two cellular telephone numbers registered on the National Do Not Call Registry ("DNC"), including 8 such calls to *ring* in the new year on January 1, 2018. Between July 1, 2018 and July 17, 2018, Keller Williams' marketing plan resulted in Plaintiff receiving numerous additional autodialed and

---

[1] From the Keller Williams Education website, available at, http://www.kw.com/kw/education.html (last accessed March 28, 2018).
[2] KW Maps Coaching, available at, http://mapscoaching.kw.com/coaches/dianna-kokoszka.
[3] https://blog.kw.com/keller-williams-named-top-training-organization-worldwide

prerecorded calls on behalf of Keller Williams agents to Plaintiff's two cellular telephone numbers.

6.      In Plaintiff Tuli's case, Keller Williams' marketing plan resulted in approximately 7 unsolicited, autodialed calls by or on behalf of Keller Williams to Plaintiff's three cellular telephone numbers registered on the DNC over a period of 2 days in July 2018.

7.      In response to these calls, Plaintiff Wright and Plaintiff Tuli file this lawsuit seeking injunctive relief, requiring Defendant to cease directing its agents to violate the Telephone Consumer Protection Act by placing unsolicited calls to consumers' cellular telephone numbers using prerecorded messages and an automatic telephone dialing system and otherwise calling telephone numbers registered on the DNC, as well as an award of statutory damages to the members of the Classes and costs.

## PARTIES

8.      Plaintiff Bruce Wright is a resident of Point Roberts, Washington.

9.      Plaintiff Sam Tuli is a resident of Allen, Texas.

10.     Defendant Keller Williams is a Texas corporation headquartered at 1221 South Mopac Expressway Suite 400, Austin, Texas 78746.  Defendant conducts business throughout this District and the United States.

## JURISDICTION AND VENUE

11.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

12.     This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District, does significant business in this District and the state of Texas, and because the wrongful conduct giving rise to this case was directed from and/or occurred in this District.

## COMMON ALLEGATIONS

**Keller Williams Directs Franchisees to Market Keller Williams' Realty Services By Purchasing Lists of Leads from Lead Providers and Autodialing Them Without Consent**

13.    Keller Williams' marketing plan direct agents to use certain prescribed practices to market Keller Williams' realty services, including unsolicited, prerecorded and autodialed calls to cellular telephone numbers and other telephone numbers registered on the DNC.  Keller Williams impresses its marketing plan on its network of agents through its coaching and training programs, during national events like the Keller Williams Mega Camp and Keller Williams Family Reunion, and through courses and materials offered by Keller Williams University and KW MAPS (Keller Williams Mega Achievement Productivity Systems).

14.    Keller Williams also maintains an Approved Vendor program.  Keller Williams gives Approved Vendors its "trusted" seal of approval with corresponding "[a]ccess to more than 150,000 Keller Williams associates and more than 750 franchises throughout the United States and Canada."[4]   One of Keller Williams' primary approved vendors is Landvoice, a company that sells agents lists of real estate leads, researches telephone numbers associated with the leads, and provides agents with an online automatic telephone dialing system which allows them to load the lists of leads using a sequential number generator and then dial them.

15.    Landvoice's leads are in the first instance aggregated from expired listings, for-sale-by-owner properties, old expired leads, and pre-foreclosure leads.  Landvoice then uses state-of-the-art technology to "take additional steps to deliver the highest quality and quantity of owner contact information including cell phone numbers."[5]   Landvoice generates multiple phone numbers (including cell phone numbers and other numbers listed on the DNC) for each lead to ensure that the agent calling has the best chance of reaching the client.[6]   (This type of lead

---

[4] See Keller Williams Approved Vendors page, http://www.kw.com/kw/vendor-network.html, and see also the YouTube Video at the bottom in which KW agents talk about the trust they have when vendors are considered Approved Vendors (last accessed March 28, 2018).

[5] https://www.linkedin.com/company/landvoice/

[6] Landvoice is owned by Domega, Inc., "the world leader of data aggregation and lead generation [which uses] hi-tech creative systems to give clients hard-to-get data and leads."  *See* https://www.linkedin.com/company/domega-inc-/

gathering information has been commonly used by debt collectors for instance who use skip-tracing to track every possible contact related to a particular individual.)

16.    Landvoice's service includes the automatic loading of the Landvoice-generated leads lists, using a sequential number generator, into a "Power Dialer," an automatic telephone dialing system that "dial[s] leads" at a rate of 80 to 300 per hour and delivers a pre-recorded message if calls are not answered:[7] [8]

****



_____

[7] Advertisement available at, https://landvoice.com/power-dialer/.
[8] Landvoice's lists of leads are also intended by Landvoice to be easily integrated and loaded to any autodialer, not just the one provided as part of Landvoice's service. *See* blog available at, http://activerain.com/blogsview/1170875/mojo-and-landvoice--we-play-well-together---.

*Class Action Complaint and Demand for Jury Trial 1:18-cv-00775*                                    5

17.    The problem with this whole system is that Landvoice is providing multiple phone numbers (including cell phone numbers and numbers listed on the DNC) along with access to an autodialer system to agents, and neither Landvoice nor the agents have consent to call these consumers' phone numbers using an autodialer in clear violation of the TCPA. In fact, Landvoice has expressly acknowledged in response to an Atlanta Keller Williams' agent's complaints, that the leads it generates include numbers on the DNC and that, as part of its autodialer, it does not provide users a mechanism to filter out numbers on the DNC:[9, 10] ‹



---

[9] Tweet at, https://twitter.com/amandakayleign, and reply at, https://twitter.com/Landvoice/status/948623975852138496; *see also* http://www.kw.com/kw/agent/amanda-kay.

[10] Consumers' complaints to Landvoice regarding calls to numbers on the DNC are available at, https://www.bbb.org/utah/business-reviews/sales-lead-generation/landvoice-data-llc-in-orem-ut-22168844/reviews-and-complaints?section=complaints.

*Class Action Complaint and Demand for Jury Trial 1:18-cv-00775*                    6

18.     Notwithstanding, Keller Williams directs its franchisees and their agents to use the Landvoice system, which by definition knowingly promotes their violating the TCPA.[11]

19.     For example, Keller Williams includes Landvoice as a regular participant in its annual Mega Camp training program.[12]  And, as part of Mega Camp, Keller Williams "team[s] with" Landvoice to promote widespread access to Landvoice's leads and autodialer system:[13]



20.     Similarly, Landvoice is a regular participant and presenter regarding its lead generating and autodialing services at Keller Williams Family Reunion, a yearly event with over

---

[11] In fact, Keller Williams posted a YouTube video inaccurately advising agents that they may call numbers that are on the DNC, explaining: "*If for sale by owner and on the DNC, you may call them anyway.*" Video available at, https://www.youtube.com/watch?v=UVBfyPfDDjQ

[12] See video of Landvoice at Megacamp at, https://www.youtube.com/watch?v=ICHXd07b8tc (last accessed March 28, 2016).

[13] The deal is available at, https://www.landvoicedata.com/kw/ (last accessed March 28, 2016).

10,000 attendees, which features Keller Williams executives and master faculty leading educational sessions covering sales skills, leadership skills, and technology training.[14, 15, 16, 17]

21.    In addition to endorsing Landvoice's presentation at Family Reunion, Keller Williams' own trainers from Keller Williams University – which "provides an industry-leading curriculum addressing every aspect of success in real estate"[18] – direct Keller Williams agents at Family Reunion, and as part of other Keller Williams University training programs, to purchase lead lists and call them using an autodialer:



22.    Other Keller Williams programs and materials similarly direct franchisees to use an autodialer to call leads.  For example, Keller Williams' training manual for agents called Three L Blueprints, which Landvoice publishes on its website, makes clear to  agents that using an autodialer is required to become the "highest-performing associate[]."[19]

---

[14] https://trainingmag.com/trgmag-article/keller-williams-home-no-1
[15] Instagram post with the caption "…#Landvoice at #KWFR2018" [KWFR is Keller Williams Family Reunion] available at, https://www.instagram.com/p/BfcEDa9HwWD/, and photo of the Landvoice table available at, https://i.pinimg.com/736x/e6/85/6f/e6856f4daa3bd8984a089588fdf381b7--family-reunions-orlando-florida.jpg.
[16] https://trainingmag.com/trgmag-article/keller-williams-home-no-1
[17] Instagram post with the caption "…#Landvoice at #KWFR2018" [KWFR is Keller Williams Family Reunion] available at, https://www.instagram.com/p/BfcEDa9HwWD/, and photo of the Landvoice table available at, https://i.pinimg.com/736x/e6/85/6f/e6856f4daa3bd8984a089588fdf381b7--family-reunions-orlando-florida.jpg.
[18] As stated on the KW Education webpage, http://www.kw.com/kw/education.html.
[19] Full training manual available here, https://landvoice.com/wp-content/uploads/2017/05/KW_Three_L_Blueprints.pdf.

23.     In fact, Keller Williams' marketing plan for franchisees – involving purchasing lists of leads and autodialing them – is reinforced at the highest levels of Keller Williams' organization.  Dianna Kokoszka, CEO of KW MAPS Coaching at Keller Williams, who co-teaches training classes with Keller Williams founder Gary Keller, developed an entire training program called BOLD (Business Objective: A Life by Design) centered around obtaining Landvoice generated leads and autodialing them, which Keller Williams claims "has helped **tens of thousands**" of its agents.  In fact, Keller Williams agents who sign up for BOLD are given a free trial account with Landvoice:[20]



24.     Keller Williams coaching and training programs and materials are an integral part of the Keller Williams franchise system, and are the means by which Keller Williams controls the manner in which franchisees market for new listings – i.e., buying lists of leads and autodialing the associated telephone numbers without consent and, as a result of known

---

[20] https://landvoice.com/bold/welcome/

deficiencies in Landvoice's products, oftentimes notwithstanding their being registered on the DNC.

## PLAINTIFF WRIGHT'S ALLEGATIONS

**At Keller Williams' Direction, Keller Williams Agents Repeatedly Called Plaintiff Wright's Cell Phone Numbers Without His Consent, Despite Their Being Listed on the DNC**

25.     Plaintiff Wright is the subscriber of two cellular telephone numbers that he registered on the DNC on January 22, 2016 to prevent unsolicited marketing calls.

26.     In 2017, Plaintiff Wright, through a Re/Max real estate agency, listed for sale an apartment he owns in Orlando, Florida.  The official multiple listing service listing for the property provided the Re/Max agent's telephone number as a contact number, and did not list any of Wright's telephone numbers.  In late 2017, at Wright's request, Re/Max removed Wright's listing from the market.

27.     As soon as the listing was removed, Plaintiff Wright began receiving unsolicited autodialed calls on his two cellular phone numbers.  Not surprisingly, this is one of the advertised features of Landvoice: to immediately identify and allow agents to call phone numbers related to "expired" listings – regardless of whether the consumer has advertised his phone number (which Wright did not do), or given consent to being contacted (which Wright also did not do):[21]

---

[21] Landvoice webpage, https://landvoice.com/.



28.      Between January 1, 2018 and January 15, 2018, Plaintiff Wright received at least 20 calls to his two cellular telephone numbers from at least 4 different Keller Williams franchises.  The following chart provides a breakdown of the calls by cellular telephone number, franchise, calling phone number, date, and time:

### Plaintiff Wright's First Cell Phone Number

**Keller Williams Classic:**


- January 1, 2018 using phone number 407-353-7706 at 10:04 AM
- January 15, 2018 using phone number 407-445-7088 at 9:20 AM


**Keller Williams Advantage:**


- January 1, 2018 using phone number 407-535-1300 at 5:22 PM

**Keller Williams Classic II:**

- January 3, 2018 using phone number 407-476-3660 at 10:34 AM

**Unknown Keller Williams:**

- January 1, 2018 using phone number 407-476-1651 at 8:20 AM
- January 2, 2018 using phone number 407-476-1651 at 7:18 PM

### Plaintiff Wright's Second Cell Phone Number

**Keller Williams Classic:**

- January 1, 2018 using phone number 407-353-7706 at 7:08 AM
- January 1, 2018 using phone number 407-292-5400 at 8:40 AM

**Keller Williams Advantage:**

- January 1, 2018 using phone number 321-296-9641 at 7:25 AM
- January 2, 2018 using phone number 407-535-1300 at 9:33 AM
- January 9, 2018 using phone number 407-207-0825 at 5:56 AM
- January 10, 2018 using phone number 407-207-0825 at 6:48 AM
- January 10, 2018 using phone number 407-207-0825 at 9:09 AM

**Keller Williams Classic II:**

- January 3, 2018 using phone number 407-476-3660 at 7:34 AM

**Keller Williams Parks:**

•      January 15, 2018 using phone number 407-865-0427 at 10:37 AM

**Unknown Keller Williams:**

•      January 1, 2018 using phone number 407-476-1651 at 5:20 AM
•      January 1, 2018 using phone number 407-476-1651 at 9:27 AM
•      January 10, 2018 using phone number 352-631-7985 at 7:24 AM
•      January 10, 2018 using phone number 352-631-7985 at 8:00 AM
•      January 10, 2018 using phone number 352-631-7985 at 8:02 AM

29.      These calls to Plaintiff Wright were solicitations by Keller Williams' agents. They were marketing their real estate services in an effort to obtain the listing for Wright's Orlando property.  When Wright asked the agents how they got his contact information, he was told on multiple occasions that his phone numbers were provided by Landvoice because it was associated with an expired listing. He was also told that that calls were being made to him from Landvoice's list of leads using a dialer on which the leads were loaded.  Among other agents, this was expressly stated to Wright by Dustin Berger from Keller Williams Parks on January 15, 2018, during a call that began with a noticeable pause, indicating that an autodialer was used.

30.      Prior to that, on January 1, 2018, Plaintiff Wright received a prerecorded voice message from phone number 321-296-9641. The call came in at 7:25 AM from a Keller Williams Advantage agent who asked Wright to call him back at phone number 407-270-2168.

31.      After initiating litigation against Keller Williams, Keller Williams' agents stopped calling Plaintiff Wright for a few months, until Sunday July 1, 2018, when Plaintiff Wright began receiving additional autodialed calls from Keller Williams agents.  The following chart provides a breakdown of the calls by phone number, franchise, calling phone number, date, and time:

*Class Action Complaint and Demand for Jury Trial 1:18-cv-00775*                              13

## Plaintiff Wright's First Cell Phone Number

**Keller Williams Advantage:**

- July 1, 2018 using phone number 352-509-0079 at 5:03 AM
- July 1, 2018 using phone number 321-239-3202 at 7:25 AM
- July 2, 2018 using phone number 321-405-2444 at 6:10 AM
- July 2, 2018 using phone number 407-476-7292 at 6:32 AM
- July 7, 2018 using phone number 407-371-8111 at 9:25 AM
- July 7, 2018 using phone number 321-405-2444 at 9:38 AM
- July 14, 2018 using phone number 407-573-2322
- July 17, 2018 using phone number 321-926-9371 at 2:11 PM

## Plaintiff Wright's Second Cell Phone Number

**Keller Williams Advantage:**

- July 1, 2018 using phone number 407-900-6801 at 8:17 AM
- July 2, 2018 using phone number 321-405-2444 at 9:16 AM
- July 2, 2018 using phone number 407-990-6686 at 10:46 AM
- July 2, 2018 using phone number 407-573-2322
- July 12, 2018 using phone number 407-573-2322
- July 16, 2018 using phone number 407-573-2322
- July 17, 2018 using phone number 407-573-2322 at 10:09 AM

**Unknown Keller Williams:**

- July 2, 2018 using phone number 407-573-2322 at 8:20 AM
- July 2, 2018 using phone number 407-573-2322 at 11:46 AM
- July 7, 2018 using phone number 407-476-8954 at 7:15 AM

32.    On July 1, 2018 at 7:25 AM, the Keller Williams agent that called Plaintiff Wright's cellular phone number using 321-239-3202 left a prerecorded voice message. The message introduces the agent as being Cesar, offering to sell Wright's property that had been taken off the market.

33.    Plaintiff Wright called Cesar back at phone number 321-239-3202 on July 1, 2018 at 10:41 AM. Wright began the call by confirming Cesar's name and which agency he works at, and then demanded that the calls stop.

34.    Despite the request for all calls to stop, the same prerecorded voice calls were made to Plaintiff Wright on July 2, 2018 at 6:32 AM and at 10:46 AM.

35.    On July 9, 2018 at 7:15 am, Plaintiff Wright received an autodialed call from a Keller Williams agent using phone number 407-476-8954. After the agent introduced himself as being with Keller Williams Realty, he told Wright which property he was inquiring about. In return, Plaintiff Wright asked the agent how he got Wright's phone number. The agent answered that he uses a system that locates phone numbers. The agent specifically indicated that he uses Vulcan7. Plaintiff Wright then strongly demanded that the agent remove his number from their system and never call again.

36.    Plaintiff Wright has never provided his cellular phone numbers to Landvoice or Keller Williams, or otherwise consented to any Keller Williams agent placing solicitation telephone calls to either of his phone numbers registered on the DNC.

## PLAINTIFF TULI'S ALLEGATIONS

**At Keller Williams' Direction, Keller Williams Agents Repeatedly Called Plaintiff Tuli's Cell Phone Numbers Without His Consent, Despite Their Being Listed on the DNC**

37.    Plaintiff Tuli is the subscriber of three cellular telephone numbers that he registered with the DNC on August 4, 2007, September 8, 2011, and August 27, 2014.

38.    Plaintiff Tuli had a property listed for sale, but he took down the listing for a short period of time on July 16, 2018 so the listing could be changed. Keller Williams agents, and the company they all purchased their leads from, pounced on this *delisting* of Plaintiff Tuli's property, and as an invitation to place unsolicited calls to Tuli to market Keller Williams' realty

services.  These calls continued until July 18, 2018.  The following chart provides a breakdown of the calls by phone number, franchise, calling phone number, date, and time:

### Plaintiff Tuli's First Cell Phone Number

**Keller Williams Realty Plano:**

- July 17, 2018 at 8:28 AM using phone number 214-504-5723
- July 17, 2018 at 8:37 AM using phone number 972-839-0004

**Keller Williams Arlington:**

- July 17, 2018 at 10:56 AM using phone number 817-637-6822

### Plaintiff Tuli's Second Cell Phone Number

**Keller Williams Realty Plano:**

- July 18, 2018 using phone number 972-839-0004
- July 18, 2018 using phone number 214-504-5723

**Keller Williams Arlington:**

- July 18, 2018 using phone number 817-637-6822

**Plaintiff Tuli's Third Cell Phone Number**

**Keller Williams Arlington:**

•      July 18, 2018 using phone number 817-637-6822

39.     Plaintiff Tuli never directly or indirectly consented to receiving solicitation calls from Keller Williams' agents.

40.     The unauthorized telephone calls made by Keller Williams' agents at Keller Williams' direction, as alleged herein, have harmed Plaintiff Wright and Plaintiff Tuli in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of their phones, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phones.

41.     Seeking redress for these injuries, Plaintiff Wright and Plaintiff Tuli, on behalf of themselves and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed voice calls to cellular telephones, unsolicited calls using a pre-recorded voice, and unsolicited calls to telephone numbers registered on the DNC.

## CLASS ALLEGATIONS
**Class Treatment Is Appropriate for Plaintiffs' TCPA Claims Arising From Calls Made by Keller Williams Agents at Keller Williams' Direction**

42.     Plaintiff Wright and Plaintiff Tuli bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following five Classes:

     **Prerecorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through the present (1) Defendant (or an agency acting on behalf of Defendant) called (2) using a prerecorded voice message, and (3) for whom

Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiffs, or (b) they did not obtain prior express written consent.

**Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action through the present (1) Defendant (or an agency acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using an automatic telephone dialing system, and (4) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiffs, or (b) they did not obtain prior express written consent.

**Autodialed Stop Class**: All persons in the United States who from four years prior to the filing of this action through the present: (1) Defendant (or an agency acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using an automatic telephone dialing system, (4) after the person informed Defendant that s/he no longer wished to receive phone calls from Defendant.

**Prerecorded Stop Class**: All persons in the United States who from four years prior to the filing of this action through the present: (1) Defendant (or an agency acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using a prerecorded voice message, (4) after the person informed Defendant that s/he no longer wished to receive phone calls from Defendant.

**Do Not Call Registry Class:** All persons in the United States who (1) Defendant (or an agency acting on behalf of Defendant) called more than one time; (2) within any 12-month period (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiffs, or (b) they did not obtain prior express written consent.

43.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated

and/or released. Plaintiff Wright and Plaintiff Tuli anticipate the need to amend the Class definitions following appropriate discovery.

44.    **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

45.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Wright and Plaintiff Tuli and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)    whether Defendant's conduct constitutes a violation of the TCPA;

(b)    whether Defendant utilized an automatic telephone dialing system to make their calls to Plaintiff Wright and Plaintiff Tuli and the members of the Classes;

(c)    whether Defendant systematically made multiple telephone calls to Plaintiff Wright and Plaintiff Tuli, and consumers whose telephone numbers were registered with the National Do Not Call Registry and whether calls were made to such persons after they requested to no longer be called;

(d)    whether Defendant placed calls to Plaintiff Wright and Plaintiff Tuli, and members of the Classes using an autodialer after such persons requested to no longer be called;

(e)    whether Defendant placed calls to Plaintiff Wright and members of the Classes using a prerecorded voice message after such persons requested to no longer be called;

(f)    whether Defendant made autodialed telephone calls to Plaintiff Wright and Plaintiff Tuli, and members of the Classes without first obtaining prior express written consent to make the calls;

(g)    whether Defendant left voicemails using a pre-recorded or artificial voice; and

(h)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

46.    **Adequate Representation**: Plaintiff Wright and Plaintiff Tuli will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in class actions. Plaintiff Wright and Plaintiff Tuli have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to either Plaintiff. Plaintiff Wright and Plaintiff Tuli and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Wright and Plaintiff Tuli nor their counsel have any interest adverse to the Classes.

47.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to either Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

48.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Wright and the Prerecorded No Consent Class)**

49.    Plaintiff Wright repeats and realleges paragraphs 1 through 47 of this Complaint and incorporates them by reference.

50.    Defendant and/or its agents transmitted unwanted solicitation telephone calls to Plaintiff Wright and the other members of the Prerecorded No Consent Class using a prerecorded voice message.

51.    These prerecorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Wright and the other members of the Prerecorded No Consent Class.

52.    Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). As a result of Defendant's conduct, Plaintiff Wright and the other members of the Prerecorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Autodialed No Consent Class)**

53.    Plaintiff Wright and Plaintiff Tuli repeat and reallege paragraphs 1 through 47 of this Complaint and incorporate them by reference.

54.    Defendant and/or its agents made unwanted solicitation telephone calls to cellular telephone numbers belonging to Plaintiff Wright, Plaintiff Tuli and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

55.    These solicitation telephone calls were made *en masse* without the prior express written consent of the Plaintiff Wright, Plaintiff Tuli and the other members of the Autodialed No Consent Class.

56.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Wright, Plaintiff Tuli and the other members of the Autodialed No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### THIRD CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Wright and the Autodialed Stop Class)**

57.     Plaintiff Wright repeats and realleges paragraphs 1 through 47 of this Complaint and incorporates them by reference.

58.     Defendant and/or its agents made unwanted solicitation telephone calls to cellular telephone numbers belonging to Plaintiff Wright and the other members of the Autodialed Stop Call Class after being told to stop calling.

59.     These solicitation telephone calls were made *en masse*.

60.     Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (c)(5). As a result of Defendant's conduct, Plaintiff Wright and the other members of the Autodialed Stop Call Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### FOURTH CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Wright and the Prerecorded Stop Class)**

61.     Plaintiff Wright repeats and realleges paragraphs 1 through 47 of this Complaint and incorporates them by reference.

62.    Defendant and/or its agents made unwanted solicitation telephone calls to cellular telephone numbers belonging to Plaintiff Wright and the other members of the Prerecorded Stop Call Class after being told to stop calling.

63.    These solicitation telephone calls were made *en masse*.

**64.**    Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(B). As a result of Defendant's conduct, Plaintiff Wright and the other members of the Prerecorded Stop Call Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## FIFTH CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Do Not Call Registry Class)**

65.    Plaintiff Wright and Plaintiff Tuli repeat and reallege paragraphs 1 through 47 of this Complaint and incorporate them by reference.

66.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

67.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[22]

68.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or

---

[22] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

69.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Wright, Plaintiff Tuli and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

70.    Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have an accurate written policy of dealing with do not call requests, by failing to accurately inform or train its personnel engaged in telemarketing regarding the existence and/or use of any do not call list, and by failing to internally record and honor do not call requests.

71.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Wright, Plaintiff Tuli and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff Wright, Plaintiff Tuli and the Do Not Call Registry Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.


## PRAYER FOR RELIEF


**WHEREFORE**, Plaintiff Wright and Plaintiff Tuli, individually and on behalf of the Classes, pray for the following relief:

72.    An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Wright and Plaintiff Tuli as the representative of the Classes; and appointing their attorneys as Class Counsel;

73.    An award of actual and/or statutory damages and costs;

74.    An order declaring that Defendant's actions, as set out above, violate the TCPA;

75.    An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

76.    Such further and other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff Wright and Plaintiff Tuli request a jury trial.

DATED this 12th day of September, 2018.


By:   /s/ Adam Muery
    Adam Muery (24046495)
    111 W. 2nd Street
    Elgin, Texas 78621
    Phone 512-200-7367
    Fax 1-877-466-4478
    Adam.muery@gmail.com

    LAW OFFICES OF STEFAN COLEMAN, P.A.
    Stefan Coleman, *pro hac vice pending*
    law@stefancoleman.com
    201 S. Biscayne Blvd, 28th Floor
    Miami, Fl 33131
    Telephone: 877.333.9427/Fax: 888.498.8946

    KAUFMAN P.A.
    Avi R. Kaufman, *pro hac vice pending*
    kaufman@kaurmanpa.com
    400 NW 26th Street
    Miami, FL 33127
    Telephone: 305.469.5881

    *Attorneys for Plaintiff Wright, Plaintiff Tuli,*
    *and the putative Classes*